# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAYDEE URENA, individually, and on behalf of all others similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>VALLEY NATIONAL BANK, *and* DOES 1-100,<br><br>*Defendants*. | Case No. 2:20-cv-3305<br><br>Hon. William J. Martini<br><br><u>Motion Return Date</u>:  August 3, 2020<br><br><u>Oral Argument Requested</u> |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VALLEY NATIONAL BANK'S MOTION TO DISMISS

Eric T. Werlinger (application for admission forthcoming)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
Tel.:  202-625-3500
eric.werlinger@katten.com

Jonathan Rotenberg
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
Tel: 212-940-8800
jonathan.rotenberg@katten.com

Stuart M. Richter (admitted *pro hac vice*)
Andrew J. Demko (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East – Suite 2600
Los Angeles, CA 90067
Tel.: 310-788-4400
stuart.richter@katten.com
andrew.demko@katten.com

*Counsel for Defendant Valley National Bank*

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................. 1

II. BACKGROUND ................................................................................. 3

    A. Plaintiff Is Bound by the Terms of Valley's Account Agreement and Check Card Agreement ................................................................. 3

    B. Valley Authorizes Transactions and Assesses Fees Using a Customer's Available Balance. .................................................................. 4

    C. Valley Charges a Fee for "Each Overdraft Item." ..................................... 6

    D. Customers Are Required to Inform Valley of Discrepancies Within 45 Days of Receiving Their Monthly Statements. ............................... 8

    E. Plaintiff's Lawsuit. ........................................................................ 8

III. LEGAL STANDARD ........................................................................... 9

IV. ARGUMENT ..................................................................................... 11

    A. Plaintiff's Claims Are Time Barred. ................................................... 11

        1. All of Plaintiff's claims are barred because she did not notify Valley of the alleged discrepancies in her statement within 45 days. ...... 11

        2. Plaintiff's EFTA claim is also barred by the one-year statute of limitation. ........................................................................... 12

    B. All of Plaintiff's State-Law Claims Are Either Partially or Completely Preempted by Federal Banking Law. .......................................... 13

    C. In All Events, Plaintiff's Claims Fail as a Matter of Law Because the Account Agreement Permits Valley to Assess the Challenged Fees. ...... 15

        1. Plaintiff does not identify a breach of the Account Agreement. . 15

        2. Plaintiff does not plead facts establishing a violation of the covenant of good faith and fair dealing. ........................................ 21

3.      Because Plaintiff concedes an express contract controls in this case, her quasi-contract claims must be dismissed.................................. 23

4.      Plaintiff's Consumer Fraud Act Claim Fails Multiple Times Over. ........................................................................................................ 23

5.      Plaintiff has no injury under the EFTA and Regulation E........... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................ 10, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................ 10, 16

*Chambers v. NASA Fed. Credit Union,*
222 F. Supp. 3d 1 (D.D.C. 2016) ............................................ 17

*Construcciones Haus Soceidad v. Kennedy Funding Inc.,*
2008 WL 1882857 (D.N.J. Apr. 24, 2008) .............................. 23

*Davis v. Wells Fargo,*
824 F.3d 333 (3d Cir. 2016) .................................................... 26

*Domann v. Summit Credit Union,*
2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) ...................... 4, 17

*Gothic Const. Grp., Inc. v. Port Auth. Trans-Hudson Corp.,*
711 A.2d 312 (N.J. Super. Ct. App. Div. 1998) ...................... 11

*Grande Vill. LLC v. CIBC Inc.,*
No. 14-CV-3495, 2015 WL 1004236 (D.N.J. Mar. 6, 2015) ............... 15, 17

*Gutierrez v. Wells Fargo Bank, N.A.,*
704 F.3d 712 (9th Cir. 2012) .................................... 13, 14, 21, 23

*Hassler v. Sovereign Bank,*
374 F. App'x 341 (3d Cir. 2010) ............................................ 24

*Inventory Recovery Corp. v. Gabriel,*
No. 11-CV-01604, 2012 WL 2990693 (D.N.J. July 20, 2012) .................. 23

*Lambert v. Navy Fed. Credit Union,*
2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ..............................*passim*

*Lossia v. Flagstar Bancorp, Inc.,*
895 F.3d 423 (6th Cir. 2018) .................................................. 6, 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 26

*Malhan v. Anthony Robbins Cos.,*
    No. 05-CV-05951, 2006 WL 776778 (D.N.J. Mar. 24, 2006) ............................ 11, 15

*Marshall v. Verde Energy USA, Inc.,*
    No. 18-cv-1344, 2019 WL 1254562, at *6 (D.N.J. Mar. 19, 2019) .............. 22, 23, 24

*Mielo v. Steak 'n Shake Operations, Inc.,*
    897 F.3d 467 (3rd Cir. 2018) ................................................................... 26

*Mrs. Ressler's Food Prod. v. KZY Logistics, LLC,*
    No. 17-CV-02013, 2017 WL 3868703 (D.N.J. Sept. 5, 2017) ................................ 9

*N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.,*
    No. 10-CV-148, 2012 WL 209349 (D.N.J. Jan. 24, 2012) ......................................... 22

*Page v. Alliant Credit Union,*
    No. 18-cv-11481, 2019 WL 3084481 (D.N.J. June 17, 2019), *report and recommendation adopted in relevant part,* 2019 WL 3082604 (D.N.J. July 15, 2019) ....................................................................................... 26, 27

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3d Cir. 1993) .................................................................. 10

*Pryor v. Nat'l Collegiate Athletic Ass'n,*
    288 F.3d 548 (3d Cir. 2002) ................................................................... 10

*Ramon v. Budget Rent-A-Car Sys., Inc.,*
    No. 06-CV-1905, 2007 WL 604795 (D.N.J. Feb. 20, 2007) .................................... 23

*Ritz Hotels Servs., LLC v. Bhd. of Amalgamated Trades Local Union 514,*
    No. 18-CV--15400, 2019 WL 4746351 (D.N.J. Sept. 30, 2019) ............................ 26

*Rubano v. Jersey City Mun. Utilities Auth.,*
    No. 06-CV-3058, 2008 WL 11287132 (D.N.J. Mar. 6, 2008) .................................. 11

*Sands v. McCormick,*
    502 F.3d 263 (3d Cir. 2007) ................................................................... 10

*Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.,*
    737 F.3d 879 (3d Cir. 2013) ................................................................... 15

*Sons of Thunder, Inc. v. Borden, Inc.*,
  148 N.J. 396, 690 A.2d 575 (1997) ................................................................ 21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .................................................................................... 26

*Stolba v. Wells Fargo & Co.*,
  No. 10-CV-6014, 2011 WL 3444078 (D.N.J. Aug. 8, 2011) ........................... 24

*Suber v. Chrysler Corp.*,
  104 F.3d 578 (3d Cir. 1997) ............................................................................ 24

*Tempo Networks LLC v. Gov't of NIA*,
  No. 14-CV-06334, 2016 WL 2625026 (D.N.J. May 9, 2016) .......................... 22

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
  140 F.3d 478 (3d Cir. 1998) .............................................................................. 9

*Umland v. PLANCO Fin. Serv., Inc.*,
  542 F.3d 59 (3d Cir. 2008) .............................................................................. 10

*Urbino v. Ambit Energy Holdings, LLC*,
  No. 14-CV-5184, 2015 WL 4510201 (D.N.J. July 24, 2015) .................. 21, 22, 24

*Whittington v. Mobiloil Fed. Credit Union*,
  No. 16-CV-482, 2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ........... 12, 13, 14, 21

## Statutes

12 U.S.C. § 38 .................................................................................................... 14

15 U.S.C. § 1693 *et seq.* ................................................................................... 3, 8

15 U.S.C. § 1693m .............................................................................................. 12

N.J.S.A. § 56:8-1 *et seq.* .............................................................................. 2, 8, 23

## Rules

Federal Rule of Civil Procedure Rule 12(b)(1) ................................................... 26

Federal Rule of Civil Procedure Rule 12(b)(6) ..................................................... 9

Federal Rules of Civil Procedure Rule 9(b) ........................................................ 25

Federal Rules of Evidence Rule 201(b) .............................................................. 7

NACHA Operating Rules, Subsection 2.12.4 ...................................... 7, 8, 19

**Regulations**

12 C.F.R. § 1005.17 ............................................................................................. 8

12 C.F.R. § 1005.17(b)(1) ................................................................................. 25

**Other Authorities**

CFPB, Winter 2015 Supervisory Highlights § 2.3 ........................................... 4

*Financial Institution Lists*, U.S. DEPARTMENT OF THE TREASURY,
    COMPTROLLER OF THE CURRENCY,
    https://www.occ.treas.gov/topics/charters-and-licensing/financial-
    institution-lists/index-financial-institution-lists.html ................................. 13

NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit
    Origination: Roles and Responsibilities of ODFIs and RDFIs* (Sept. 30,
    2014) *available at* https://www.nacha.org/news/ach-operations-
    bulletin-1-2014-questionable-ach-debit-origination-roles-and-
    responsibilities ........................................................................................... 7, 19

## I.    INTRODUCTION

Plaintiff Haydee Urena, whose account was closed in July 2015 with a significant negative balance, claims Defendant Valley National Bank breached its contract by assessing two types of overdraft/nonsufficient funds (NSF) fees.  Compl., Dkt. No. 1 (attached hereto as **Exhibit A**).  Plaintiff does not (and cannot) allege overdraft fees are improper; charging fees to customers like Plaintiff, who overdraft their accounts, is a long-standing and accepted banking practice.  Nor can she argue that Valley's practices were unfair or its contracts should have more clearly described the circumstances when she would be assessed overdraft fees because those types of claims are expressly preempted by federal law.  To survive a motion to dismiss, Plaintiff must plausibly allege that Valley's contract says the Bank will not charge the two specific types of overdraft fees she is complaining about.  Plaintiff comes nowhere close to meeting the plausibility standard because the Valley contract documents expressly allow the fees Plaintiff claims are prohibited.

First, Plaintiff claims Valley assessed overdraft fees when she had money in her account because Valley should have used her "ledger balance" instead of her "available balance" to process payment transactions.  This claim should be dismissed because the Valley account agreement repeatedly says that customers must maintain a "sufficient available balance" in their accounts to cover withdrawals, or else they will be charged a fee.  "Available" funds must mean less than "all" funds (*i.e.*, the ledger balance), or else the modifier would not be unnecessary.  In fact, Valley explains the concept of the

"available balance" in another portion of the contract that Plaintiff neglected to attach to her Complaint. When read as a whole, the contract categorically forecloses Plaintiff's argument.

Similarly, the contract documents clearly state that Valley charges a fee for "each overdraft item"—which is any withdrawal that is rejected for insufficient available funds. Nowhere does the contract say that Valley will charge only a single fee if customers (or the merchants with whom they do business) attempt multiple withdrawals using the same instrument. This is confirmed by operating rules promulgated by the National Automated Clearing House Association ("NACHA"), which govern ACH payments and expressly allow merchants to resubmit rejected transactions. Plaintiff attempts to argue that, each time a transaction is submitted for payment, it is the same "item" and therefore a fee can only be charged on the first overdraft. But that position was flatly rejected by the leading case on this issue based on contract language that is identical to the language in the Valley Account Agreement. *See Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *3-5 (E.D. Va. Aug. 14, 2019), *appeal docketed*, 19-1993 (4th Cir. 2019) (dismissing claims challenging retry fees because applicable contract stated a fee would be charged for "each item.").

Plaintiff's remaining theories likewise fail. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because she does not plead that Valley acted with malice or bad faith. Her quasi-contract claims are barred by the fact that she admits an express contract controls the conduct at issue in

this case.  Plaintiff's claim under the New Jersey Consumer Fraud Act is preempted, inadequately pled, and otherwise fails as a matter of law.  And Plaintiff does not plead an injury-in-fact to support standing for her claim under the Electronic Fund Transfer Act and Regulation E.  Even if she had, the one-year statute of limitations has long since expired.

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    Plaintiff Is Bound by the Terms of Valley's Account Agreement and Check Card Agreement.

When Plaintiff opened an account at Valley, she agreed to be bound by Valley's Account Disclosures and Rules (the "Account Agreement").  She attached a copy of it and the Fee Schedule to her suit.  Compl. ¶¶ 6, 33 & Exs. 1-2.

Several of Plaintiff's claims involve debit-card transactions.  *E.g.*, *id.* ¶¶ 16, 27-40.  This implicates an additional agreement Plaintiff relied on but did not attach to her Complaint: the Valley Check Card Agreement and Regulation E Disclosure (the "Check Card Agreement").  Decl. of Leslie A. Catanese, Ex. A.  She agreed to the terms of this document "[b]y accepting or using the Card," which she necessarily concedes she did by making the claims alleged in her Complaint.  Check Card Agreement at 1.

**B.     Valley Authorizes Transactions and Assesses Fees Using a Customer's Available Balance.**

Like most other financial institutions, Valley tracks the "ledger" balance and the "available" balance for each customer's account.  The ledger balance "factors in only settled transactions in calculating an account's balance." *Domann v. Summit Credit Union*, 2018 WL 4374076, at *1 (W.D. Wis. Sept. 13, 2018) (quoting CFPB, Winter 2015 Supervisory Highlights § 2.3).  It thus reflects all deposits into a customer's account, less payments that have actually been posted or processed. *Id.* at *1-2.  The available balance is the ledger balance minus funds for "electronic transactions that the institutions have authorized (and therefore are obligated to pay) but not yet settled," as well as "holds on deposits that have not yet cleared." *Id.* at *1 (quoting CFPB, Winter 2015 Supervisory Highlights § 2.3).  Put another way, the available balance reflects the amount of money that a customer has "available" to spend at any given time.

Here is an example of how the two balances work.  If a customer with a $100 ledger balance swipes her debit card to buy dinner for $40, Valley places a pre-authorization hold on the account at the request of the restaurant.  The customer's available balance is only $60, because the $40 she just spent is no longer "available" to use.  Once the transaction is authorized, Valley is obligated to pay it.  Her ledger balance will remain $100 until the restaurant charge is presented for payment by the merchant and posts to the customer's account, which could be a few days later.

The Check Card Agreement clearly and unmistakably explains how this works. It warns customers they must maintain *available* funds in their accounts, that certain debit-card transactions will result in temporary holds on available funds, and that Valley is **not** responsible for transactions that are declined due to holds on unsettled debit-card transactions:

> **You must have available funds in an account when you use your Card for a transaction**, unless the account has overdraft privileges and the transaction falls within your applicable limits.
>
> . . .
>
> The effective date of any transaction is the date it is posted on your account statement.  The posting date may differ from the actual transaction date.
>
> . . .
>
> The merchant may be required to obtain an authorization from us for any transaction.  **The available balance in your primary account will be reduced by the amount of any transaction for which the merchant received authorization from us, even if the documentation evidencing the transaction has not yet been received or processed by us**.  *When we have cleared the transaction, any 'hold' placed on your account for the amount of this transaction will be released and your primary checking account will be debited for the amount of the transaction.*  **You agree that we are not responsible if we do not authorize or if we dishonor other POS, ATM, automatic, electronic, or check transactions drawn on your primary checking account while such a hold is in place on your account**.

Check Card Agreement at 1-3 (emphases added).

If a customer lacks sufficient available funds to cover withdrawals made from her account, her check and ACH payments may be rejected, in which case she will be

charged a returned item NSF fee for each rejected transaction.  Conversely, if Valley elects to pay an overdraft transaction, then the customer will be charged a paid item NSF fee.[1]  The Account Agreement unambiguously says so:

> You must maintain a ***sufficient available balance*** in your account to cover the withdrawals you make.  If you overdraw your account, the Bank may, in its sole discretion, either (a) refuse to pay the item(s) that caused the overdraft or (b) pay the overdraft. . . . ***A non-sufficient funds (NSF) fee will be charged for each overdraft item*** regardless of whether the Bank decides to pay or refuses to pay the overdraft.

Account Agreement at 2 (emphases added).

## C.    Valley Charges a Fee for "Each Overdraft Item."

As stated above, "[a] non-sufficient funds (NSF) fee will be charged for ***each*** overdraft item regardless of whether the Bank decides to pay or refuses to pay the overdraft."  Account Agreement at 2 (emphasis added).  The term "item" includes "withdrawals accomplished by check, draft or other written order or instruction for the payment of money, in-person withdrawal, ACH entry or other electronic means."  *Id.*

This case involves electronic requests for payment received through an Automated Clearing House ("ACH").  Compl. ¶ 50.  ACH transactions are governed by the NACHA Operating Rules ("NACHA Rules"), which are incorporated into the Account Agreement.  Account Agreement at 12; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426-27 (6th Cir. 2018) (summarizing the relevant NACHA Rules).

---

[1] There is no fee if a debit card transaction is simply declined at the time a member seeks authorization to make a purchase.

Critically, Plaintiff ("the Receiver") is the one who authorizes the merchant ("the Originator") to introduce each ACH transaction into the ACH network. *Lossia*, 895 F.3d at 426. It is then up to the merchant or the merchant's bank (*i.e.*, "Originating Depository Financial Institution" or the "ODFI") to decide when and how a debit will be presented for payment. *Lossia*, 895 F.3d at 426-27. Valley, as "Receiving Depository Financial Institution" ("RDFI"), *must* honor and process all requests it receives through the ACH network. *Id.*

The NACHA Rules further state that the "Originator or ODFI may Reinitiate any Entry" that "was returned for insufficient or uncollected funds." NACHA Rules, Subsection 2.12.4.[2] The resubmitted charge is a *new* transaction with unique identifying information—*e.g.*, "a reinitiated Entry could have a different Effective Entry Date than the original Entry, as well as a different ACH Trace Number."[3] Moreover, it is up to the merchant or the merchant's bank—*not* Valley—to decide whether and when a returned ACH withdrawal will be resubmitted. They may take *up to 180 days* to resubmit

---

[2] The NACHA Rules are publicly available in both print copy and on the internet, and the contents of the rules are not subject to reasonable dispute. This Court may accordingly take judicial notice of the relevant rules. *See* Fed. R. Evid. 201(b). For the convenience of the Court, a copy of the relevant NACHA Rules is attached hereto as **Exhibit B**.

[3] NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs* (Sept. 30, 2014) (citing NACHA Rules, Subsection 2.12.4), *available at* https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-ach-debit-origination-roles-and-responsibilities.

the charge for payment.  NACHA Rules, Subsection 2.12.4.  Thus, it is Plaintiff who authorizes each ACH transaction, even if the payment is rejected and re-submitted.

### D.   Customers Are Required to Inform Valley of Discrepancies Within 45 Days of Receiving Their Monthly Statements.

Valley provides a periodic statement to its customers that contains "a record of all transactions during that period," including all fees charged to the customer's account. *Id.* at 5.  Customers are required to "examine the statement" and "immediately notify the Bank in writing" of any forgery, errors, "or any other discrepancy or problem."  *Id.* Failure to do so means that the items in the statement "will be deemed to be correct." *Id.*  Customers have a maximum of 45 days to notify Valley of discrepancies or problems appearing in their statements.  *Id.*  After that, "the Bank will not be liable for any loss you sustain."  *Id.*  This requirement operates as an "absolute preclusion" to the Bank's liability, "applies to each item you fail to report . . . within 45 days," and applies "regardless of the legal theory you may assert."  *Id.*

### E.   Plaintiff's Lawsuit.

Since she has not banked with Valley since 2015, Plaintiff alleges no conduct in her Complaint occurring after July 2015.  Compl. ¶ 50.  She filed this putative class-action suit nearly five years later in March 2020.  Dkt No. 1.  She brings six causes of action:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) money had and received; (5) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*; and (6) violation of the "Opt-In

Rule" under the Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. § 1005.17.  Compl. ¶¶ 68-105.

To support these claims, Plaintiff alleges Valley supposedly charged improper overdraft and NSF fees under one of two theories.  *First*, she claims that Valley improperly authorized transactions and charged fees using her available balance instead of her ledger balance.  Valley refers to this as Plaintiff's "sufficient funds" argument. *Second*, she argues Valley promised to charge only one NSF fee per consumer-authorized ACH transaction, even if her merchant submits multiple requests for payment in an attempt to collect.  This is Plaintiff's "retry fee" argument.

Plaintiff claims she was harmed by this purported conduct, pointing to two sets of fees she incurred in June and July 2015: (1) she received two NSF fees in July 2015 purportedly stemming from the same ACH "item" that was presented twice by her merchant and rejected twice by Valley due to insufficient available funds; and (2) she incurred two separate NSF fees in June 2015 for attempted ACH withdrawals that were rejected despite her claim that she had "sufficient funds in [her] account to cover" them. Compl. ¶ 50.

## III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted." *Mrs. Ressler's Food Prod. v. KZY Logistics, LLC*, No. 17-CV-02013, 2017 WL 3868703, at *2 (D.N.J. Sept. 5, 2017).  In deciding a motion to dismiss under Rule 12(b)(6), a court

must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not

10

physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## IV.   ARGUMENT

### A.    Plaintiff's Claims Are Time Barred.

Plaintiff alleges no conduct in her Complaint occurring after July 2015.  She waited until March 2020 to file this suit.  That is far too late.  Per her Account Agreement, Plaintiff was required to bring all discrepancies appearing in her monthly account statement to Valley's attention no later than 45 days after receiving her statement.  Moreover, her Regulation E claim is barred by the EFTAs statute of limitations.

#### 1.    All of Plaintiff's claims are barred because she did not notify Valley of the alleged discrepancies in her statement within 45 days.

The Account Agreement requires customers to bring "any discrepancy or problem" appearing on their account statements to Valley's attention within 45 days. Plaintiff did not comply with this provision.  She instead waited nearly five years after receiving the statements at issue in this case (which she was obligated to review immediately for discrepancies) and then filed this suit without bringing any of the issues mentioned herein to the attention of the Bank.

Parties may limit the time in which to file claims by contract.  *Rubano v. Jersey City Mun. Utilities Auth.*, No. 06-CV-3058, 2008 WL 11287132, at *4 (D.N.J. Mar. 6, 2008). Moreover, a plaintiff must perform its obligations under a contract before filing suit,

including compliance with mandatory dispute resolution. *Malhan v. Anthony Robbins Cos.*, No. 05-CV-05951, 2006 WL 776778, at *2 (D.N.J. Mar. 24, 2006); *see Gothic Const. Grp., Inc. v. Port Auth. Trans-Hudson Corp.*, 711 A.2d 312, 315 n.4 (N.J. Super. Ct. App. Div. 1998). Here, Plaintiff does not and cannot argue that she complied. If she believed the fees she received in 2015 did not comply with the Account Agreement, she had to provide written notice to Valley no later than 45 days after her last statement. Account Agreement at 5. All the claims in her Complaint arise from a purported "discrepancy or problem" in assessing fees, and the requirement that she bring these issues to Valley's attention within 45 days of her statement applies "regardless of the legal theory you may assert." *Id.*

Plaintiff suggests in her Complaint that she did not understand her claims until she spoke with her current lawyers in February 2020. Compl. ¶ 49. But that is irrelevant. She had access to her account statement and the relevant contractual documents in 2015. That is all she needed put her on notice of her claim; indeed, Plaintiff does not claim to have discovered any previously hidden factual information before she decided to contact a lawyer in February 2020.

**2.     Plaintiff's EFTA claim is also barred by the one-year statute of limitation.**

Additionally, Plaintiff brought her Regulation E claim far outside the limitations period set by the statute. A suit for a violation of the EFTA and Regulation E must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C.

§ 1693m.  Quite apart from the fact that Plaintiff has no injury-in-fact to support her EFTA claim, *see infra* Section IV.C.5., she identifies no conduct in her Complaint that occurred after July 2015.  Compl. ¶ 50.  She filed this suit in March 2020.  That is way outside the one-year limitations period set by EFTA, and her claim is thus time barred.[4]

## B.   All of Plaintiff's State-Law Claims Are Either Partially or Completely Preempted by Federal Banking Law.

If not time barred in its entirety, large portions of Plaintiff's Complaint are preempted.  Valley is a national banking association regulated by the United States Department of the Treasury, Office of the Comptroller of the Currency ("OCC").[5]  As such, Plaintiff cannot maintain suit against Valley to the extent she claims that Valley is liable under state law for failing to adequately disclose its overdraft practices or because the practices are somehow "unfair" or "unconscionable."

"The requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted."  *Gutierrez v. Wells Fargo Bank,*

---

[4] Though she does not even claim to have received an applicable fee under Regulation E, an EFTA claim would have accrued for limitation purposes as soon as the first such fee was charged.  *Whittington v. Mobiloil Fed. Credit Union,* No. 16-CV-482, 2017 WL 6988193, at *13 (E.D. Tex. Sept. 14, 2017) (citing many cases supporting the same). Likewise, the discovery rule has no application here because Plaintiff could have discovered any supposed violation of Regulation E soon after it purportedly happened by diligently reviewing her monthly account statement as she was contractually required to do.  *See id.*

[5] *Financial Institution Lists*, U.S. DEPARTMENT OF THE TREASURY, OFFICE OF THE COMPTROLLER OF THE CURRENCY, https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/index-financial-institution-lists.html (last visited Jun. 25, 2020).

*N.A.*, 704 F.3d 712, 725 (9th Cir. 2012).  In this case, Plaintiff's contract, covenant of good faith and CFA claims boil down to an attack on the sufficiency of Valley's contract disclosures.  *See, e.g.*, Compl. ¶¶ 68-88, 96-105.  Those claims are preempted by federal law.  *See Gutierrez*, 704 F.3d at 725 (state law claims regarding a national bank's failure to disclose certain overdraft fee practices were preempted); *Lambert*, , 2019 WL 3843064, at *2 (state law claims purporting to dictate credit union overdraft disclosures were preempted by federal law); *Whittington* , 2017 WL 6988193, at *11 (concluding that plaintiff's fraud claims were "preempted by TISA to the extent they are rooted in [the credit union's] alleged failure to disclose certain information governed by TISA's disclosure requirements").

Plaintiff also asserts that Valley's overdraft practices are "unfair" or "unconscionable."—particularly the $15 per day Daily Overdraft Fee (although it is not alleged to be the basis for any of her claims or any of the classes she seeks to represent).  *E.g.*, Compl. ¶¶ 21, 23, 50, 97, 100.  These claims are likewise preempted by federal banking law.  *See Gutierrez*, 704 F.3d at 725-26 (concluding that the National Banking Act preempted state law consumer protection claims for "unfair" or "unconscionable" practices by banks); *Lambert,* 2019 WL 3843064 at *3 ("To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or *the fairness of the [NSF] fee practice itself* . . . those arguments are clearly 'preempted.'") (emphasis added); *Whittington*, 2017 WL 6988193 at *9 (holding plaintiff's deceptive trade practices

claims preempted as a "de facto regulation of the activities outlined in [federal banking law]").

**C.   In All Events, Plaintiff's Claims Fail as a Matter of Law Because the Account Agreement Permits Valley to Assess the Challenged Fees.**

The only claims Plaintiff can allege that are not preempted are claims that Valley breached its contract.  Even if her purported breach of contract claims are not time barred, they should still be dismissed because the Valley contract expressly allows both of the fees she is challenging.

**1.   *Plaintiff does not identify a breach of the Account Agreement.***

Plaintiff's principal claim is for breach of contract (Count I).  The terms of Plaintiff's contract with Valley are governed by New Jersey law.  To state a claim for a breach of contract, "Plaintiffs must allege each of the following elements: (1) a valid contract existed between Plaintiffs and Defendant, (2) Defendant breached this contract, (3) Plaintiffs performed under this contract, and (4) Plaintiffs were damaged as a result of Defendant's breach." *Malhan*, 2006 WL 776778, at *2.  Where "terms of a contract are clear and unambiguous, there is 'no room for interpretation or construction,' and the Court "must enforce those terms as written." *Grande Vill. LLC v. CIBC Inc.*, No. 14-CV-3495, 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015) (quoting *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)).  "A plaintiff must identify the specific contract or provision that was allegedly breached." *Id.*

Here, Plaintiff claims that Valley breached its contractual promises related to the assessment of NSF fees in two different ways:

**Sufficient-Funds Argument**:  Plaintiff claims she incurred two $35 NSF fees in June 2015 when the Bank returned two ACH transactions despite the fact that, "on information and belief, there were sufficient funds in the account to cover the item." Compl. ¶ 50.  Read charitably, this invokes her sufficient-funds theory for breach-of-contract.  It is striking that Plaintiff pleads zero factual detail to back up her conclusory label.  She never tells the Court (or Valley) of what she is informed and believes that leads her to the conclusion that she had sufficient funds—under her theory, a positive ledger balance—to cover the two charges.  Bare conclusions will not do under *Twombly* and *Iqbal*, and her failure to provide any quantum of detail around these transactions is reason enough to dismiss her argument.

In any event, Plaintiff's argument is simply wrong as a matter of law under the plain terms of the contract.  She identifies no provision in the contractual documents that would reasonably convey the promise that Valley would assess fees based upon her ledger balance.  In fact, the contract says the opposite.  The Account Agreement states: "You must maintain a **sufficient available balance** in your account to cover the withdrawals you make."  Account Agreement at 2.  Otherwise, the attempted withdrawal creates an overdraft item and will result in a fee.  *Id.*

The Check Card Agreement further states that, when a customer initiates a debit-card transaction, "[t]he **available balance** in your primary account **will be reduced by**

*the amount of any transaction* for which the merchant received authorization from us." Check Card Agreement at 1-3 (emphasis added). That is so "even if the documentation evidencing the transaction has not yet been received or processed by us"—meaning there is a hold placed on the account. *Id* (emphasis added). Finally and most importantly, the Check Card Agreement warns: "**we are not responsible if we do not authorize or if we dishonor other POS, ATM, automatic, electronic, or check transactions drawn on your primary checking account while such a hold is in place on your account**." *Id.* (emphasis added).

In an effort to avoid reality, Plaintiff claims there are actually two types of "available" balances—the "collected available balance" and the "artificial available balance"—and the contract is supposedly unclear as to which it refers to when it says "available balance." Compl. ¶¶ 27-29. That argument is doubly wrong. First, the terms "collected balance" and "artificial available balance" appear nowhere in the contract. Her argument is thus an attempt modify the meaning of the contract by inserting words that do not exist. Plainly, she cannot do that. *Grande Vill. LLC*, 2015 WL 1004236, at *5 (holding that courts must enforce contract terms "as written").

Second and in any event, the contractual documents are crystal clear that a customer's "available balance" includes deductions for holds on debit-card transactions. The Check Card Agreement explicitly says so. Moreover, the Account Agreement uses the term "available balance" to describe Valley's overdraft policy. In doing so, the Account Agreement unambiguously conveys that a customer's ability to withdraw and

use funds is limited to her "available balance." *Domann v. Summit Credit Union*, 2018 WL 4374076, at \*6 (W.D. Wis. Sept. 13, 2018) ("The word 'available' has meaning only if it denotes something other than 'all of the funds' or 'actual balance.'"); *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 11-13 (D.D.C. 2016) (same).

Simply put, there is no way to read the Account Agreement and Check Card Agreement to mean that Valley would use a customer's ledger balance to assess NSF fees. Accordingly, the Court should dismiss Plaintiff's sufficient-funds argument.

**Retry-Fee Argument**: Plaintiff also claims she was harmed by a $ 35 NSF fee in July 2015 incurred when her merchant submitted a previously rejected ACH transaction in an attempt to get paid. Plaintiff does not contest the propriety of the $35 fee she received when her merchant submitted (and Valley rejected) the ACH transaction the first time. Rather, she claims that subsequent attempts by her merchant to collect on the ACH should have been treated as the same "item," and thus she should have only incurred a single NSF fee regardless of how many withdrawal requests her merchant submitted (and Valley rejected).

That argument defies the contractual language, the NACHA Rules, and common sense. The Account Agreement states that "[a] non-sufficient funds (NSF) fee will be charged for **each** overdraft item." Account Agreement at 2 (emphasis added). An overdraft item is created each time "you overdraw your account"—that is, attempt a withdrawal without "a sufficient available balance in your account to cover the withdrawals you make." *Id.* So each time Plaintiff's merchant submits an ACH

withdrawal to Valley, and Valley returns the withdrawal due to insufficient available funds, there is a new "overdraft item" and a new fee is assessed to Plaintiff. *Id.* Indeed, there is no limitation in the contractual language on the number of times a customer might incur a fee from overdraft items.[6]

In an effort to create ambiguity, Plaintiff construes the word "item" to mean an ACH withdrawal, as well as any "re-presentment" or "retry" if the ACH withdrawal is rejected. Compl. ¶ 41. Yet again, Plaintiff attempts to read into the contract words that do not exist. The Account Agreement defines "item" as "withdrawals accomplished by" various means, including "ACH entry or other electronic means." Account Agreement at 2. Stated differently, an "item" is simply a request to debit money from a customer's account by a variety of instruments. *Id.* It does not impose any kind of restriction or stipulation on a subsequent debit request—even one that is a re-submission of a previously rejected withdrawal.

Plaintiff's argument also makes no sense in light of the governing NACHA Rules. Once a debit request is returned to the ODFI, it is up to the Originator and the ODFI—not Valley—whether and when the debit will be presented a second time for

---

[6] There is, however, a cap in the NACHA Rules on the number of times an Originator or an ODFI may re-submit the same transaction to the consumer's financial institution. NACHA Rules, Subsection 2.12.4.1 ("An Originator or ODFI must not Reinitiate an Entry that has been returned for insufficient or uncollected funds more than two times following the Return of the original Entry.").

payment.[7]  The resubmission could occur the same day, 180 days later, or never.[8]  At the point this new transaction (with *a new transaction number*) is presented for payment, Valley determines anew whether or not the customer has a "sufficient available balance."  Account Agreement at 2.  If not, Valley may return the ACH request, which will create a new "overdraft item," and result in a new fee to the customer.  *Id.*

The U.S. District Court for the Eastern District of Virginia in *Lambert v. Navy Federal Credit Union* recently rejected the same argument that Plaintiff makes here in light of identical contract language.  2019 WL 3843064, at *3-5.  The parties' contract in *Lambert* provided "'[a] fee may be assessed . . . for each returned debit item.'"  *Id.* at *3.  The *Lambert* court rejected the plaintiff's argument that "two ACH debit requests made by the same merchant, in the same amount, for the same purpose, are the same 'debit item.'"  *Id.*  Rather, the court observed that, "[w]hen Plaintiff's [merchant] 're-presented' the request for payment, it was a new ACH debit item."  *Id.* at *4.  That was so because the credit union "did not keep Plaintiff's [merchant's] unsuccessful first ACH request," but instead "returned the request" and "waited for [the merchant] to submit another request for payment."  *Id.*  The *Lambert* court accordingly dismissed the breach-of-contract claim because the "contract unambiguously provide[d] that 'each' time Navy

---

[7] NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs* (Sept. 30, 2014) (citing NACHA Rules, Subsection 2.12.4).

[8] *Id.*

Federal Credit Union 'returns' a request for payment (a 'debit item') for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request." *Id.* at *5.

In a last-ditch effort to come up with a claim, Plaintiff suggests that Valley's Account Agreement must at least be ambiguous because other financial institutions use different contractual language that Plaintiff apparently believes is more straightforward. Compl. ¶¶ 45-47. This is a thinly veiled attempt to impose a specific disclosure upon Valley—a national bank—and it is preempted by federal law. *Gutierrez,* 704 F.3d at 725 ("The requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted."); *see also Lambert*, 2019 WL 3843064, at *3; *Whittington*, 2017 WL 6988193, at *9-10.

### 2. Plaintiff does not plead facts establishing a violation of the covenant of good faith and fair dealing.

Plaintiff next argues that Valley breached the implied covenant of good faith and fair dealing (Count II). She does not plead any additional facts to support this claim. Rather, she merely appends her implied-covenant argument to the back of her contract argument. Her implied-covenant claim thus fails for substantially the same reasons just discussed.

"New Jersey law dictates that all contracts include an implied covenant that parties will act in good faith." *Urbino v. Ambit Energy Holdings, LLC*, No. 14-CV-5184, 2015 WL 4510201, at *6 (D.N.J. July 24, 2015) (citing *Sons of Thunder, Inc. v. Borden,*

*Inc.,* 148 N.J. 396, 420, 690 A.2d 575 (1997)).  But that does not mean Plaintiff may use the implied covenant to re-write the terms of the contract:  "If a contract's term is vague, the implied covenant of good faith and fair dealing can be used as a gap filler, but the covenant cannot override the contract's express language." *Id.*  As explained above, Plaintiff's contract arguments fly in the face of the express terms of the Check Card Agreement and the Account Agreement.  Because her implied-covenant argument is completely duplicative of her contract argument, it should be dismissed.

Moreover, this Court has previously held that "that a claim for breach of that covenant requires malice or bad faith." *Tempo Networks LLC v. Gov't of NIA*, No. 14-CV-06334, 2016 WL 2625026, at *4 (D.N.J. May 9, 2016) (Martini, J.) (citing *Urbino*, 2015 WL 4510201, at *6).  Plaintiff barely mentions the element of bad faith. Compl. ¶¶ 78, 81.  And what little she has to say is just a rehash of her contract claims. *Id.*  "Although a court may infer that Defendant acted with a bad motive, Plaintiff must provide factual support that would allow the Court to draw such a conclusion." *Marshall v. Verde Energy USA, Inc.*, No. 18-cv-1344, 2019 WL 1254562, at *6 (D.N.J. Mar. 19, 2019); *see also Tempo Networks LLC*, 2016 WL 2625026, at *4 ("[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.").  Plaintiff has failed to provide any factual support for an inference of malice or bad faith.  Accordingly, her claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

> ### 3. *Because Plaintiff concedes an express contract controls in this case, her quasi-contract claims must be dismissed.*

Plaintiff also pleads causes of action for unjust enrichment (Count III) and money had and received (Count IV). Unjust enrichment and money had and received "are in essence the same claim" under New Jersey law. *N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.*, No. 10-CV-148, 2012 WL 209349, at *2 n.2 (D.N.J. Jan. 24, 2012); *see Ramon v. Budget Rent-A-Car Sys., Inc.*, No. 06-CV-1905, 2007 WL 604795, at *5 (D.N.J. Feb. 20, 2007) (Martini, J.) (same). Both claims should be summarily dismissed because Plaintiff concedes that the subject matter of these claims are covered by an express contract. As this Court has held, "'[w]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for unjust enrichment.'" *Inventory Recovery Corp. v. Gabriel*, No. 11-CV-01604, 2012 WL 2990693, at *6 (D.N.J. July 20, 2012) (Martini, J.) (quoting *Construcciones Haus Soceidad v. Kennedy Funding Inc.*, 2008 WL 1882857, at *6 (D.N.J. Apr. 24, 2008)).

> ### 4. *Plaintiff's Consumer Fraud Act Claim Fails Multiple Times Over.*

Plaintiff further contends that Valley violated the New Jersey Consumer Fraud Act. She relies upon the exact same conduct complained of in her contract and quasi-contract claims to support this argument. It fails as a matter of law for three reasons.

*First*, Plaintiff's CFA argument is preempted to the extent she complains that Valley has engaged in "unfair" conduct or fraud by omission. As explained in Section

IV.B., Plaintiff may not use state law to challenge the supposed fairness of the fee practices of a national bank. *Gutierrez*, 704 F.3d at 725-26.

*Second*, Plaintiff's failure to identify any conduct beyond Valley's supposed breach of contract dooms her CFA claim. It is well settled that "[w]hen a CFA claim is based on a valid, written contract, 'a court will dismiss [the] claim' if the conduct alleged is 'expressly authorized' by the terms of that contract." *Marshall*, 2019 WL 1254562, at *3 (quoting *Urbino*, 2015 WL 4510201, at *3); *see also Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (affirming dismissal of CFA where alleged wrongful conduct was expressly permitted by agreement at issue). Moreover, "when a CFA claim is based on a breach of contract, Plaintiff must allege a 'substantial aggravating circumstance,' demonstrating that the defendant's behavior 'stands outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Marshall*, 2019 WL 1254562, at *3 (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997)).

Here, Valley's fee practices are expressly authorized by the contractual documents for the reasons discussed in Section IV.C.1. Plaintiff makes no attempt to plead "substantial aggravating circumstances" demonstrating that Valley's practices were outside the norm of reasonable business practice. Indeed, she would run headlong into preemption if she were to try, as the thrust of this argument would be that Valley's fee practices is somehow unfair. Plaintiff's CFA claim is ultimately an afterthought argument tacked onto the back of her contract without any additional development. It should accordingly be dismissed.

*Third* and finally, Plaintiff simply has not stated a claim for violation of the CFA. "The elements of a CFA claim include: (1) unlawful conduct, (2) ascertainable loss, and (3) a causal relationship between each defendant's alleged conduct and the plaintiff's ascertainable loss." *Stolba v. Wells Fargo & Co.*, No. 10-CV-6014, 2011 WL 3444078, at *5 (D.N.J. Aug. 8, 2011) (Martini, J.).  Because a CFA claim sounds in fraud, Plaintiff must plead these elements in conformity with Rule 9(b) of the Federal Rules of Civil Procedure.  *Id.*  Here, Plaintiff claims that Valley's unlawful conduct was its purported breach of contract.  For the reasons discussed in Section IV.C.1., there is no breach of contract.  So there is no violation of the CFA.  *See id.*

### 5. Plaintiff has no injury under the EFTA and Regulation E.

Finally, Plaintiff claims Valley violated the EFTA and Regulation E promulgated thereunder by charging fees on covered transactions without her express consent.  The problem with this argument is that Plaintiff does not allege a transaction covered by Regulation E, much less that she was charged an improper fee arising from it.  The provisions that Plaintiff purportedly sues under concern only two types of transactions: ATM withdrawals and non-recurring debit-card transactions.  12 C.F.R. § 1005.17(b)(1). Plaintiff admits it.  Compl. ¶¶ 90, 93.  But nowhere in her Complaint does she allege that she was charged any kind of fee arising from either of these two transaction types. Thus even if there were something wrong with Valley's fee policies subject to Regulation E (which there is not), Plaintiff has failed to show that she was actually injured by any purported violation of it.

Without an actual injury, Plaintiff does not even establish that this Court has Article III jurisdiction to hear her claim, much less state a claim upon which relief can be sought.[9]  A federal court must satisfy itself that the plaintiff has standing or it lacks jurisdiction under Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").  "To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3rd Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

The deficiency of Plaintiff's allegations is strikingly similar to that seen in *Page v. Alliant Credit Union*—another overdraft-fee lawsuit brought in this District by the same lawyers representing Plaintiff in this case.  No. 18-cv-11481, 2019 WL 3084481 (D.N.J. June 17, 2019), *report and recommendation adopted in relevant part*, 2019 WL 3082604 (D.N.J. July 15, 2019).  There, the plaintiff similarly argued that her financial institution violated the EFTA and Regulation E by charging her NSF fees on non-recurring debit-card charges. *Id.* at *1.  But just like Plaintiff here, the plaintiff in *Page* did not allege that she

---

[9] Under circuit law, "[a] challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack.  The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Ritz Hotels Servs., LLC v. Bhd. of Amalgamated Trades Local Union 514*, No. 18-CV-15400, 2019 WL 4746351, at *1 (D.N.J. Sept. 30, 2019) (same).

actually suffered an NSF fee covered by Regulation E.  *Id.* at *3-4.  Accordingly, the Court dismissed the case for want of jurisdiction.  *Id.* at *8.  The same result should obtain here.

## CONCLUSION

Plaintiff has not established that Valley breached any express promise made to her in the contract.  The remainder of her claims fail as a matter of law.  Accordingly, Valley respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Date: June 25, 2020

Respectfully submitted,

/s/ Jonathan Rotenberg
Jonathan Rotenberg
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
Tel: 212-940-8800
jonathan.rotenberg@katten.com

Eric T. Werlinger (application for admission forthcoming)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
Tel.:  202-625-3500
eric.werlinger@katten.com

Stuart M. Richter (admitted *pro hac vice*)
Andrew J. Demko (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East – Suite 2600
Los Angeles, CA 90067
Tel.: 310-788-4400
stuart.richter@katten.com
andrew.demko@katten.com

*Counsel for Defendant Valley National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be filed on June 25, 2020, with the Clerk of the Court for the United States District Court for the District of New Jersey using the Court's electronic filing system, which will send a notice of electronic filing to all attorneys appearing in this matter.

/s/ Jonathan Rotenberg      
